1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAUL RODRIGUEZ,  )<br>              )<br>        Petitioner,  )<br>              )<br>   vs.        )<br>              )<br> A.P. KANE,      )<br>              )<br>        Respondent.  )<br>_____ ) | No. C 05-4570 MJJ (PR)<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

Petitioner, a California prisoner proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a 2004 decision by the California Board of Parole Hearings ("Board")[1] finding him unsuitable for parole. Respondent has filed an answer, and petitioner has filed a traverse.

**BACKGROUND**

In 1990, petitioner was convicted in Los Angeles County Superior Court of first-degree attempted murder with use of a firearm, and causing great bodily injury. He was sentenced to a term of life plus seven years in state prison. In 2004, the California Board of Prison Terms (the "Board") found him unsuitable for parole. He challenged this decision unsuccessfully in habeas petitions filed at all three levels of the California courts.

_____

[1]At the time of the decision, the Board was called the California Board of Prison Terms.

G:\PRO-SE\MJJ\HC.05\rodriguez.dny.wpd

**DISCUSSION**

**A.** **Standard of Review**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975). Under AEDPA, this Court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" clearly established United States Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, 'or if it confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Early v. Packer, 537 U.S. 3, 8 (2002) (quoting Williams, 529 U.S. at 405-06). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); Rice v. Collins, 126 S. Ct.

1   969, 975 (2006).

2   B.        Analysis of Claim

3           Petitioner claims that the Board violated his right to due process by denying parole

4   despite the evidence of petitioner's rehabilitation, and by basing their decisions solely on the

5   facts and circumstances of the underlying offense.  A parole board's decision satisfies the

6   requirements of due process if "some evidence" supports the decision.  Sass v. California

7   Board of Prison Terms, 461 F.3d 1123, 1128-29 (9th Cir. 2006) (adopting some evidence

8   standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55

9   (1985)); see also Irons v. Carey, 479 F.3d 658 (9th Cir. 2007).[2]  The standard of "some

10  evidence" is met if there was some evidence from which the conclusion of the administrative

11  tribunal could be deduced.  See Hill, 472 U.S. at 455.  An examination of the entire record is

12  not required nor is an independent assessment of the credibility of witnesses or weighing of

13  the evidence.  Id.  The relevant question is whether there is any evidence in the record that

14  could support the conclusion reached by the [administrative] board.  See id.  Additionally,

15  the evidence underlying the Board's decision must have some indicia of reliability.

16  McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002).

17          In assessing whether or not there is "some evidence" supporting the Board's denial of

18  parole, this Court must consider the regulations which guide the Board in making its parole

19  suitability determinations.  California Code of Regulations, title 15, section 2402(a) states

20  that "[t]he panel shall first determine whether the life prisoner is suitable for release on

21  parole.  Regardless of the length of time served, a life prisoner shall be found unsuitable for

22  and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk

23  of danger to society if released from prison."  The regulations direct the Board to consider

24  "all relevant, reliable information available."  Cal. Code of Regs., tit. 15, § 2402(b).  Further,

25  they list sets of circumstances tending to indicate whether or not an inmate is suitable for

26  parole.  Cal. Code of Regs., tit. 15, § 2402(c)-(d).

27  _____

28          [2]Respondent argues that the Ninth Circuit is wrong in finding Hill's "some evidence"
    requirement applicable to parole denials.  This Court, of course, has no discretion to disregard or
    overrule applicable decisions from the Ninth Circuit.

    G:\PRO-SE\MJJ\HC.05\rodriguez.dny.wpd        3

The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct.  15 Cal. Code of Regs. § 2402(c).  The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law.  15 Cal. Code of Regs. § 2402(d).  These circumstances are meant to serve as "general guidelines," giving the Board latitude in the weighing of the importance of the combination of factors present in each particular case.  Cal. Code of Regs., tit. 15, § 2404(c).  Once the prisoner has been found suitable for parole, the regulations set forth a matrix  to set a base term.  15 Cal. Code Regs. § 2403(a).[3]

The California Supreme Court has found that the foregoing statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity.  In re Dannenberg, 34 Cal. 4th 1061, 1070-71 (2005).

> While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should "normally" receive "uniform" parole dates for similar crimes, subdivision (b) provides that this policy applies "*unless* [the Board] determines" that a release date cannot presently be set because the particular offender's crime and/or criminal history raises "*public safety*" concerns requiring further indefinite incarceration.  (Italics added.)  Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole

---

[3]The matrix provides three choices of suggested base terms for several categories of crimes: for attempted first degree murders, the matrix of base terms ranges from the low of 7, 8 or 9 years, to a high of 10, 11 or 12 years, depending on certain facts of the crime.  15 Cal. Code Regs. § 2403(d).  One axis of the matrix concerns the relationship between defendant and victim and the other axis of the matrix concerns the amount of harm inflicted.  The choices on the axis for the relationship of murderer and victim are "participating victim," "prior relationship," "no prior relationship," and "threat to public order or murder for hire."  The choices on the axis for the circumstances of the murder are "minor injury," "victim assaulted," "major injury," or "torture."  Each of the choices are further defined in the matrix.  Id.

> date on the grounds the particular offender's criminality presents a *continuing public danger*.

Id. at 1070 (emphasis, brackets, and parentheses as in original).  In sum, "the Board, exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually." Id. at 1071.  The California Supreme Court's determination of state law is binding in this federal habeas action.  Hicks v. Feiock, 485 U.S. 624, 629 (1988).

Here, the Board denied parole on the basis of the facts of petitioner's commitment offense, his prior criminal and social history, his parole plans, his participation in self-help programs, and the District Attorney's opposition to parole.

    A.    Commitment Offense

Under state law, the Board may consider the gravity of the commitment offense in assessing an inmate's suitability for parole.  Cal. Penal Code § 3041(b); 15 Cal. Code Regs, § 2402(c)(1).  The factors to be considered in determining whether the offense was committed in an "especially heinous, atrocious or cruel manner," so as to indicate unsuitability are whether: (1) "multiple victims were attacked, injured or killed in the same or separate incidents;" (2) the offense was committed in "a dispassionate and calculated manner, such as an execution-style murder;" (3) "the victim was abused, defiled or mutilated during or after the offense;" (4) the offense was committed in a manner demonstrating "an exceptionally callous disregard for human suffering;" and (5) "the motive for the crime is explicable or very trivial in relation to the offense."  Id.

The California Supreme Court also has determined that the facts of the crime can alone support a sentence longer than the statutory minimum even if everything else about the prisoner is laudable.  "While the board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release."  Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (2002) ("The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole" but might violate due process "where no

circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense.").  Moreover, the federal constitutional guarantee of due process does not preclude the parole board from relying on unchanging factors such as the circumstances of the commitment offense or the parole applicant's pre-offense behavior in determining parole suitability.  Sass, 491 F.3d at 1129 (commitment offenses in combination with prior offenses provided some evidence to support denial of parole at subsequent parole consideration hearing); Irons, 479 F.3d at 660, 665 (finding commitment offense and prior offenses amounted to some evidence to deny parole).

At the parole hearing, the Board recited the facts of petitioner's offense as follows:[4]

> On [] January 19th, 1990, at approximately 9:30 p.m. in the evening, Rodriguez and five . . . or six other friends were visiting a carnival at Morgan Park in the city of Baldwin Park, California.  Rodriguez . . . and a companion approached and 16-year-old Anthony Soto, and asked Soto where he was . . . from.  Soto replied, "I aint from nowhere[," m]eaning that he didn't have any gang affiliation."  Rodrguez then said, "Puto North Side Baldwin Park" and left.

> Approximately ten minutes later, Rodriguez and co-defendant, Jessie or Jose Robles again approached Soto and accused him of being from "the East Side."  Robles hit Solo in the face.  Unable to defend himself against so many, Soto [ran] towards a nearby Burger King.  Rodriguez and the other gang members followed, continuing their attack.  They knocked the victim to the ground.  Rodriguez then [shot] the victim twice in the back.  At that point a witness heard the gang members yelling out, "El Chollo, El Chango." . . . Another witness at the scene identified Rodriguez as the person seeing carrying a blue steel handgun and who had actually fired the shots.  Rodriguez and Robles were subsequently arrested and convicted.

(Resp. Ex. 2 at 7-8.)

The foregoing facts of the offense provided some evidence that the crimes were carried out in an "especially heinous, atrocious or cruel manner" under 15 Cal. Code Regs. § 2402(c)(1).  The crimes were "dispassionate" and demonstrated an "exceptionally callous disregard" for the victim's suffering insofar as petitioner and five or six others attacked a 16-year-old boy who was by himself.  After the victim was struck and fled, petitioner and his cohorts pursued him and knocked him to the ground.  While he was on the ground, petitioner shot him twice in the back from close range.  That the victim did not die does not appear to be the result of any action by petitioner.  There was

---

[4]At the hearing, petitioner did not object to this factual summary, which was set forth in the probation report..

1    evidence that the victim was "abused" in that he was struck in the face, pursued and attacked by a

2    large group before he was shot.  There was also evidence the crime was "calculated" insofar as

3    petitioner and the others approached the victim, went away, and then approximately ten minutes

4    later came back to him and attacked and shot him.  Finally, the motive for the crime is "very trivial"

5    insofar as it appears based solely on petitioner's belief that the victim was from the "East Side."

6    Under these circumstances, there is certainly "some evidence" that the commitment offense met the

7    factors set forth in the state's regulations for indicating that the murder was committed in an

8    "especially heinous, atrocious or cruel manner" such that petitioner was not suitable for parole.[5]

9            B.    <u>Additional Factors</u>

10           There was additional evidence in support of other statutory factors demonstrating

11   unsuitability for parole.  There was evidence of an unstable social history and criminal past  <u>See</u> 15

12   Cal. Code Regs. §§ 2402(c)(3) & (d)(1),(2),(6).  Petitioner was 19 at the time of the offense and had

13   been arrested "numerous" times as a juvenile and once as an adult.[6]  (Resp. Ex. 2 at 9.)  In addition,

14   petitioner was an active gang member at the time of the incident, the crimes were gang-related, and

15   petitioner had used with drugs.  (<u>Id.</u> at 9-11.)  The Board also noted that petitioner had not

16   adequately participate in self-help programs, did not have parole plans, and the prosecutor opposed

17   his release on parole.  (<u>Id.</u> at 47-48.)  <u>See</u> 15 Cal. Code Regs. §§ 2402(d)(8),(9); Cal. Pen. Code §

18   3042.

19           The record further indicates that the Board considered the evidence of petitioner's

20   rehabilitation while in prison.  The record does indicates that the Board noted that petitioner

21   accepted "full responsibility" for the crimes and that he felt "very bad" for what he did to the victim.

22   (Resp. Ex. 2 at 8-9.)  <u>See</u> 15 Cal. Code Regs. § 2402(d)(3).  The Board also commended petitioner

23

---

24       [5]The Court notes the concern expressed by the Ninth Circuit in <u>Biggs v. Terhune</u> that "over

25   time" the Board's "continued reliance in the future on an unchanging factor, the circumstance of the
     offense and conduct prior to imprisonment" would "raise serious questions involving his liberty

26   interest in parole."  334 F.3d 910, 916 (9th Cir. 2003).  The Ninth Circuit has recently criticized this
     statement as beyond the scope of the dispute before the court: "Under AEDPA it is not our function to

27   speculate about how future parole hearings could proceed." <u>Sass</u>, 461 F.3d at 1129.  In any event, the
     challenged parole denial here was based on other evidence in addition to the commitment offense and

28   criminal history, as described below, and therefore does not implicate the concerns raised in <u>Biggs</u>.

        [6]Petitioner had not previously been convicted.

G:\PRO-SE\MJJ\HC.05\rodriguez.dny.wpd        7

for the lack of disciplinary problems since 1993 and the lack of counseling memoranda since 1998, and further commended petitioner for his vocational, educational and work participation. (Resp. Ex. 2 at 49.) See 15 Cal. Code Regs. §§ 2402(c)(6) & (d)(8).

Based on the record of the Board's decision, there was "some evidence," including but not limited to the facts of the offense, that Petitioner was unsuitable for parole under the factors set forth in California's statutes and regulations for determining parole suitability. Consequently, the Board's decision did not violate Petitioner's right to due process, and the state court opinions upholding the Board's denial of parole are neither "contrary to" or an "unreasonable application of "clearly established Federal law." 28 U.S.C. § 2254(d)(1). Further, the Board's decision was not based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," because there was "some evidence" in the record to support the finding of Petitioner's unsuitability for parole. 28 U.S.C. § 2254(d)(1).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

IT IS SO ORDERED.

DATED: 12/13/07

_____
MARTIN J. JENKINS
United States District Judge